IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| CECILIA ORTIZ, | : | |
| ROSA MARTINEZ, | : | |
| PETE CRESPO, and | : | |
| HECTOR SIERRA, | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | NO. 09-6062 |
| | : | |
| v. | : | |
| | : | |
| DELAWARE RIVER PORT AUTHORITY, | : | |
| ANTHONY LUKOSIUS, | : | |
| JOHN DAMICO, | : | |
| KRISTA STELLA, | : | |
| JANE DOE, | : | |
| CITY OF PHILADELPHIA, | : | |
| SERGEANT SPRIGGS, | : | |
| NORTH BAR AND LOUNGE, | : | |
| BADCO RLS, LLC, | : | |
| LISA KENNARD, and | : | |
| RICHARD DONATO, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

BUCKWALTER, S.J.                                                                                                          May 17, 2010

Currently pending before the Court is Plaintiffs' Rule 12(b)(6) Motion to Dismiss Defendant John D'Amico's Counterclaim for Defamation. For the following reasons, the Court grants Plaintiffs' Motion.

## I.    BACKGROUND

Plaintiffs filed this 42 U.S.C. § 1983 action for alleged violations of their constitutional rights and related state law torts committed by Defendants associated with Delaware River Port Authority, Philadelphia Police, and North Bar and Lounge during an altercation at North Bar on

1

July 18, 2009. In his Counterclaim asserted pursuant to Rule 13(a), Defendant D'Amico alleges that Plaintiffs' defamed him under 42 Pa. C.S.A. § 8343(a) by making knowingly false statements about him in the course of Delaware River Port Authority's ("DRPA") investigation of its officers' conduct during the July 18, 2009 altercation. (Countercl.¶¶ 2-10.) Defendant D'Amico further alleges that these statements harmed his professional and personal reputation. (Id..)

Following the July 18, 2009 incident at North Bar and Lounge, Plaintiffs began their efforts to hold Defendants accountable for Defendants' alleged role in the altercation. On August 3, 2009, Plaintiffs filed private criminal complaints in Philadelphia Municipal Court against Defendants Lukosius and D'Amico. (Pls.' Mot. to Dismiss 2; CR-09-08-03-9506 (D'Amico); CR-09-08-03-9507 (Lukosius).) That same day, Plaintiffs Crespo, Martinez, and Ortiz filed citizen complaint forms with DRPA regarding the conduct of Defendants Lukosius and D'Amico during the July 18 incident. Plaintiffs attached photographs to their citizen complaints of the injuries Martinez and Ortiz allegedly sustained at the hands of Defendants. (Countercl., Ex. A, DRPA Internal Investigation Report, at 56.)

After receiving and reviewing the citizen complaint forms and related photographs, DRPA Chief McClintock requested that Sergeant Raymond Paterno conduct an internal investigation into these complaints. (Id.) Sergeant Paterno's investigation consisted of a review of the citizen complaints, the aforementioned photographs, and medical paperwork submitted by Plaintiffs Crespo, Martinez, and Ortiz, as well as interviews of Plaintiffs Crespo, Martinez, Ortiz and Sierra; Defendants D'Amico, Lukosius, Stella, Kennard, and Donato; Sharon Gahagan (a friend of Defendant D'Amico's); and certain non-interested individuals. (Id. at 58.)

During their respective interviews with Sergeant Paterno, Plaintiffs each provided their own narratives of the events that transpired on the night of July 18, 2009. It is the transcripts of these interviews and the content of the DRPA citizen complaints that comprise the allegedly defamatory statements asserted in the Counterclaim.

A few months after DRPA initiated its internal investigation, Plaintiffs filed the instant action in the Court of Common Pleas of Philadelphia County. On December 21, 2009, with the consent of the necessary parties, DRPA removed the case to this Court on the basis of federal question jurisdiction under 28 U.S.C. § 1331.[1] Defendant D'Amico filed his Answer and Counterclaim on December 23, 2009. Plaintiffs filed their Motion to Dismiss the Counterclaim shortly thereafter, on December 28, 2009. Defendants, in turn, filed their Response in Opposition on January 6, 2010, which was followed by the final briefing on the Motion, Plaintiffs' January 7, 2010 Reply Memorandum.

## III. STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a pleading. FED. R. CIV. P. 12(b)(6). The starting point in analyzing a pleading is Rule 8(a), which requires that a pleading, at a minimum, consist of "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). Regardless of its exact form, however, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" in order to withstand a 12(b)(6) motion to dismiss. Ashcroft v. Iqbal, — U.S. —, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544,

---

[1] The Court deemed removal proper in its Memorandum and Order of April 22, 2010. See Ortiz v. Del. River Port Auth., No. CIV.A.09-6062, 2010 WL 1633388 (E.D. Pa. Apr. 22, 2010).

3

570 (2007)). When read in the light most favorable to the plaintiff, a pleading that provides sufficient facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" meets the required level of "facial plausibility." Iqbal, 129 S. Ct. at 1949; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (according to the dictates of Iqbal, extending the 12(b)(6) standard of review established in Twombly to all civil pleadings). On the other hand, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555). All together then, in evaluating a pleading's sufficiency in relation to a Rule 12(b)(6) motion to dismiss, a "District Court must accept all of [a pleading's] well-pleaded facts as true" and draw all reasonable inferences therefrom in the light most favorable to the plaintiff, "but may disregard any legal conclusions[,]" in determining whether the plaintiff has a "'plausible claim for relief.'" Fowler, 578 F.3d at 210-211 (quoting Iqbal, 129 S. Ct. at 1949-50).

**IV. DISCUSSION**

In their Motion to Dismiss the Counterclaim for Defamation, Plaintiffs argue that the statements they made in the course of DRPA's internal investigation into Defendants Lukosius and D'Amico's conduct during the July 18, 2009 altercation at North Bar and Lounge enjoy an "absolute privilege" under Pennsylvania law, and thus cannot serve as the basis for a defamation claim. The Court agrees that Pennsylvania's absolute privilege protecting statements made preliminary to or in the course of a judicial proceeding applies to the statements at issue, and thus the Court grants Plaintiffs' Motion to Dismiss the Counterclaim.

Defamation is a state law claim rife with First Amendment implications. Federal courts addressing a state law defamation claim must determine first whether the statements at issue are defamatory under the state's law, and then if so, whether the First Amendment precludes recovery. See Tucker v. Fischbein, 237 F.3d 275, 281 (3d Cir. 2001); see also Moore v. Vislosky, 240 Fed. Appx. 457, 462-67 (3d Cir. 2007) (discussing Pennsylvania and Supreme Court caselaw on the intersection of the First Amendment and defamation claims). In the present case, the Court only performs the first step of this analysis, as Pennsylvania law[2] disposes of the defamation claim without recourse to First Amendment jurisprudence.

Under Pennsylvania law, the elements of a defamation claim are defined by statute. The statute provides that a plaintiff attempting to state a claim for defamation must establish:

> (1) The defamatory character of the communication.
> (2) Its publication by the defendant.
> (3) Its application to the plaintiff.
> (4) The understanding by the recipient of its defamatory meaning.
> (5) The understanding by the recipient of it as intended to be applied to the plaintiff.
> (6) Special harm resulting to the plaintiff from its publication.
> (7) Abuse of a conditionally privileged occasion.

42 PA. CONS. STAT. ANN. § 8343(a) (West 2010). See also Mzamane v. Winfrey, — F. Supp. 2d —, No. CIV.A. 2010 WL 893126, at *15 (E.D. Pa. Mar. 15, 2010.)[3] By the same token, a defendant bears the burden of demonstrating the following defenses, when raised, to a

---

[2] The parties do not dispute that Pennsylvania law applies to Defendant D'Amico's counterclaim for defamation.

[3] "A statement is deemed to be defamatory 'if it tends to blacken a person's reputation or expose him to public hatred, contempt, or ridicule, or injure him in his business or profession.'" Winfrey, 2010 WL 893126, at *16 (quoting Joseph v. Scranton Times L.P., 959 A.2d 322, 334 (Pa. Super. Ct. 2008)).

5

defamation claim: "(1) The truth of the defamatory communication. (2) The privileged character of the occasion on which it was published. (3) The character of the subject matter of defamatory comment as of public concern." 42 PA. CONS. STAT. ANN. § 8343(b) (West 2010); Winfrey, 2010 WL 893126, at *15; see also Bennett v. Itochu Intern, Inc., — F. Supp. 2d —, No. CIV.A.09-1819, 2010 WL 308982, at*4-5 (E.D. Pa. Jan. 25, 2010).

Plaintiffs do not dispute whether Defendant has asserted a prima facie case of defamation, but rather defend against the Counterclaim on the basis of the second statutory defense, that the allegedly defamatory statements are privileged. The Court thus focuses its attention on whether Pennsylvania's common law privilege applies to the statements Plaintiffs made to DRPA to initiate and to advance the internal investigation.

"It has long been the law of Pennsylvania that statements made by judges, attorneys, witnesses and parties in the course of or pertinent to any stage of judicial proceedings are absolutely privileged and, therefore, cannot form the basis for liability for defamation." Pawlowski v. Smorto, 588 A.2d 36, 41 (Pa. Super. Ct. 1991); see also Binder v. Triangle Publ'n, Inc., 275 A.2d 53, 56 (Pa. 1971) ("All communications pertinent to any stage of a judicial proceeding are accorded an absolute privilege which cannot be destroyed by abuse."). The absolute privilege afforded to participants in a judicial proceeding has a strong policy basis; namely, that "[a]ll persons involved in a judicial proceeding are encouraged by the privilege to speak frankly and argue freely without danger or concern that they may be required to defend their statements in a later defamation action." Smith v. Griffiths, 476 A.2d 22, 24 (Pa. 1984).

In determining whether the privilege applies, the Pennsylvania Supreme Court requires that the relevant communication must have been: "(1) issued as a matter of regular course of the

6

proceedings; [and] (2) pertinent and material to the proceedings." Bochetto v. Gibson, 860 A.2d 67, 72 (Pa. 2004) (discussing the criteria the Pennsylvania Supreme Court used in its privilege analysis in Post v. Mendel, 507 A.2d 351, 355-56 (1986)). These two factors apply equally to communications made prior to the initiation of judicial proceedings. In that instance, "the protected communication would need to have been pertinent and material and would need to have been issued in the regular course of preparing for contemplated proceedings." Post, 507 A.2d at 356.

The absolute privilege attaches to "all proceedings in which an officer or tribunal exercises official functions," including quasi-judicial functions, such as a zoning hearing (see Urbano v. Meneses, 431 A.2d 308 (Pa. Super. Ct. 1981)) or where an officer is appointed to hear certain divorce matters (see Smith, 476 A.2d at 25). Doe v. Wyoming Valley Health Care Sys., Inc., 987 A.2d 758, 766-68 (Pa. Super. Ct. 2009) (concluding that a NLRB employment hearing "constitutes a judicial proceeding, or at least a quasi-judicial proceeding.").

Finally, in analyzing the merits of a claim that the absolute privilege applies, "all doubt as to whether the alleged defamatory communication was indeed pertinent and material to the relief or redress sought is to be resolved in favor of pertinency and materiality." Pawlowski, 588 A.2d at 41. And, while "[w]hether a privilege exists/applies in a given context is a question of law for the court[,]" "[w]hether the privilege has been abused . . . is a question of fact for the jury." Wyoming Valley, 987 A.2d at 767.

In the present case, the statements Plaintiffs made in the course of DRPA's investigation into the July 18, 2009 altercation occurred significantly before the initiation of Plaintiffs' section 1983 action. Plaintiffs made these statements to Sergeant Paterno on August 7, 2009, and then

7

filed and served their Complaint upon Defendants on November 19, 2009. Even though the statements made in the course of DRPA's investigation are pertinent and material to the instant action (both focus on the same nucleus of facts surrounding the July 18, 2009 altercation), it cannot be said that these statements were "issued as a matter of regular course" of this proceeding. Thus, the absolute privilege may not extend from the context of the instant action to the statements at issue. Importantly, however, the privilege need not arise from the present case for it to protect the statements under this Court's consideration. When an absolute privilege attaches to statements that are both "issued in the regular course of judicial proceedings"and "pertinent and material to the redress or relief sought," the privilege protecting such statements from claims of defamation applies in that and all other proceedings. See Post, 507 A.2d at 353-55; Bennett, 2010 WL 308982, at *4-5 (concluding that although allegedly defamatory statement was issued before the instant litigation, the privilege extending to statements from a separate case required dismissal of defamation claim).

The present case is such an instance where a privilege emanating from a separate case works to protect the relevant statements from a defamation claim. The Court takes judicial notice that Plaintiffs filed a private criminal complaint the same day that they filed citizen complaint forms with DRPA – August 3, 2009.[4] Viewed in context with the initiation of this criminal proceeding, the Court finds that Pennsylvania's absolute privilege extends to Plaintiffs' statements made in the course of and immediately prior to DRPA's investigation.

---

[4] See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1197 (3d Cir. 1993) ("Courts have defined a public record, for purposes of what properly may be considered on a motion to dismiss, to include criminal case dispositions such as convictions or mistrials, letter decisions of government agencies, and published reports of administrative bodies . . . .") (internal citations omitted).

Applying the first of the Pennsylvania Supreme Court's two prong test to the case at hand, Plaintiffs' statements to initiate and develop DRPA's internal investigation are "pertinent and material" to the criminal proceeding Plaintiffs initiated in Philadelphia Municipal Court. The statements made to initiate and in the course of DRPA's investigation address the events that would be at the center of any criminal complaint related to the July 18, 2009 altercation. During their interviews, all Plaintiffs provided their recollections of that night, often in narrative form. These statements covered the events leading up to the altercation with Defendants Lukosious and D'Amico, through Philadelphia Police's eventual intervention to terminate the conflict. These alleged facts, and whether they could be proved, would affect the outcome of the criminal proceeding. Therefore, the statements made to initiate and in the course of DRPA's investigation are material – and thus by definition, pertinent – to the criminal proceeding.

As for the second prong of the test, the Court finds that the statements Plaintiffs made to DRPA were "issued in the regular course of preparing for contemplated proceedings." Post, 507 A.2d at 356. These statements, as given to DRPA, were part of Plaintiffs' efforts to support the criminal charges they lodged at Defendants, and they would have been issued at any number of stages of the criminal proceeding, be it the formulation of the complaint, arraignment, preliminary hearing, or trial. Additionally, when there exists colorable claims of wrongdoing against its personnel, law enforcement organizations typically conduct internal investigations into such claims. Although Plaintiffs' initiated DRPA's internal investigation by filing citizen complaint forms, the internal investigation was inextricably related to the criminal proceeding and occurred in the regular course of investigating allegedly criminal conduct by DRPA officers. The statements, thus, are sufficiently within the regular course of preparing for the contemplated

proceeding for Pennsylvania's absolute privilege to apply. Accordingly, Plaintiffs' statements satisfy both prongs of the privilege test, and cannot serve as the basis for a defamation claim.

Two relatively recent Superior Court cases support finding the statements at issue to be privileged. First, in Pawlowski v. Smorto, the Pennsylvania Superior Court concluded that statements made to law enforcement officials to induce a criminal proceeding are absolutely privileged. Pawlowski, 588 A.2d at 41-43. And second, in Marino v. Fava, the Superior Court determined that statements made to law enforcement and mental health officials to induce the state to commit an individual also enjoy an absolute privilege. 915 A.2d 121, 124 (Pa. Super. Ct. 2006). While not entirely analogous to these two precedents, the instant case presents an even more compelling circumstance for application of the privilege. Here, a criminal case was initiated concurrently with DRPA's internal investigation relating to the same incident. The facts asserted in one proceeding are necessarily material to the other. Moreover, the internal investigation took place, at least in part, as a response to the alleged criminal conduct addressed in the Municipal Court private criminal complaint. In light of both Pawlowski and Marino, there is sound basis for concluding that the privilege attaches to the statements Plaintiffs made to DRPA.[5]

---

[5] Although the Court does not rely on this argument, DRPA's internal investigation bears a substantial resemblance to a quasi-judicial proceeding. Much like an adjudicatory proceeding, the investigation was initiated by citizen complaints; it involved interviews of the complainants, the accused, and non-party witnesses; established a record on the basis of the information it obtained; and, on the basis of this record, provided DRPA's conclusion as to whether their officers conduct in the July 18 incident comported with DRPA rules. See Wyoming Valley, 987 A.2d at 766-68 (relying on Urbano, 431 A.2d at 311 and Smith, 476 A.2d at 25, in concluding that a hearing before the NLRB constitutes a judicial, or at least quasi-judicial, proceeding). Furthermore, the privilege would attach to Plaintiffs' statements during this internal investigation, since the statements are both material to and "issued as a matter of regular course of the proceedings." In this light, a colorable argument exists for extending the absolute

It is, therefore, this Court's determination that the statements Plaintiffs made to DRPA in the course of its investigation were issued in the regular course of advancing their criminal complaint and pertinent and material to the facts of that case before the Philadelphia Municipal Court. The absolute privilege thereby attaches to these statements, and shields them from claims of defamation.

V.  **Conclusion**

For the reasons stated above, Defendant D'Amico's Counterclaim is Dismissed.

---

privilege applicable to quasi-judicial/administrative function to this and similar proceedings. For the purposes, of the instant decision, however, the Court need not reach this conclusion..